*448 The coui't after taking time to deliberate, delivered the following decree:
This is a case of a new impression: the only case in ^ie boohs resembling it is that of Slanning vs. Stile, S P. Wins. 334, 337, and that is by no means as strong as this. The marital rights were and are very strong, and give absolute power to the husband over the personal property of the wife. In latter times they have been somewhat relaxed under written agreements or usage. There are three questions here. 1st. Whether John Robertson, one of the deceased, constituted his wife a sole trader. 2d. What benefit resulted to her from it? 3d. What portion of the estate of Ann Robertson (the wife of J. Robertson) goes to the complainant who was her mother ? Upon a full review of the evidence (which was very ample) relative to the acts of John Robertson and Ann his wife, it is evident that John Robertson permitted her to act a sole dealer, and to make contracts, and to purchase, and to sell on her own account, and to take titles in her own name. It is a maxim that no man shall be presumed to be ignorant of the law. There is no law here defining what is a sole dealer, or how a feme covert can be made a solo trader; nor is there in England. The custom of London authorises it: and a clause in our attachment act recognises the right in this country. See the preamble, also the 11th section, and the act of 1712. Rut there is no particular mode pointed out. If the husband permits his wile to act as such, he relinquishes! the control he had at common law. The case before the court made out by the proofs, is the strongest possible, next to producing a deed from the husband, authorising the wife to act as a sole trader; and establishes her power so to act. 2d. As to what benefit resulted to her from it? She became sole mistress of the property which she acquired in the character of a sole trader, free from the control of her husband. In this case he died first: she administered on his estate, and died soon after; whereupon the defendants administered on both estates. The difficulty is to discriminate the property. What was brought home to the house must be considered the luis- *449 bands, unless shewn to be hcr’s by documents, deeds, or employed in her trade; and except her wearing apparel. This must be the rule to discriminate. The inventory of her husband's estate may assist, as done on oath. As to the lam], the titles were made to her of her houses; to him of his; they are conclusive. As she survived her bus-band, who died without children, she is entitled to the moiety of her husband’s estate, under the statute of 1791, besides her separate estate as a sole trader. 3d. Complainant is entitled as mother of Ann Robertson to the whole of her personal estate, and to the real if the British .treaty now pending, be ratified by our government. Decree for complainant: Let the accounts be referred to the master. Costs to be paid by defendants.*
[The treaty of 19th November 1794, commonly called Mr. Jay’s treaty was then under discussion in the senate of the United States. It was soon after ratified, and became the law of the land. By the 9th article of that treaty it was agreed that “ British subjects who now hold lands in the territories of the United States, (and American citizens holding in Great Britain) shall continue to hold them, according to the nature and tenure of their respective estates and titles therein; and may grant, sell or devise the sanie,’’ &c. It was under this treaty that Mrs. Megrath who was a British subject, was decided to be entitled to the real estate of Mrs. Robertson her daughter, who died without leaving alive husband, or children, or father. She took the estate under the regulations of our statute of 1791, which allows mothers to inherit real, as well as to take personal estate.]

 See besides Slanning vs. Style, the case of Calmady vs. Calmady, 11th Viner, page 181, pl. 21.